UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO:

-----------------------------------------------------------------x
FEDNAV INTERNATIONAL LTD.,

                Plaintiff,

   -against-                                              **IN ADMIRALTY**

ALLPINE WORLDWIDE LTD.,

                Defendant,
-----------------------------------------------------------------x

## VERIFIED COMPLAINT

1. Plaintiff, Fednav International Ltd., ("FIL"), by their below-signed counsel, for their Verified Complaint in Admiralty against Defendant, Allpine Worldwide Ltd., ("AWL"), upon information and belief, alleges as follows:

## JURISDICTION

2. This is a case of admiralty and maritime jurisdiction, 28 U.S.C. § 1333, and is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and Rule B of the Supplemental Rules for Admiralty or Maritime Claims. The Court also has *quasi in rem* jurisdiction over Defendant because its property can, on information and belief, be found and attached within this District pursuant to Supplemental Rule B of the Federal Rules of Civil Procedure.

1

3. The underlying dispute arises from a maritime contract which included an arbitration clause, relevantly, providing that:

> 17. This charter shall be governed by English law subject to London arbitration on LMAA terms. BIMCO Standard Dispute Resolution Clause to apply any dispute or difference arising between Owners and the Charterers under this charter, shall be referred to three persons at London, one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision, or that of any two of them, shall be final and for the purpose of enforcing any award may be made a rule of the Court. The arbitrators shall be commercial men conversant with shipping matters. See clause 43. The arbitration shall be conducted under the Rules of the London Maritime Arbitrators Association (LMAA)…

## PARTIES

4. FIL is a business entity organized and existing under the laws of Barbados.

5. On information and belief, AWL is a business entity organized and existing under the laws of the British Virgin Islands.

## UNDERLYING EVENTS

6. On or about September 4, 2018, FIL (as charterers) entered a maritime charter party with AWL (as owners) for the employment of MV GEA ("the Vessel"), on two-three laden legs, with a laycan of September 5-11, 2018 and delivery at Koh Si Chang, Thailand (the "Charter Party").

7. The Charter Party's particular terms were confirmed by way of a recap, which incorporated the charter party between AWL and Baltnav A/S dated April 27, 2018, including, amongst other terms, its arbitration clause calling for any disputes to be resolved by arbitration in London.

8. Pursuant to the Charter Party, AWL was obliged to deliver and maintain the Vessel in a seaworthy and efficient condition, among other obligations.

9. Under the Charter Party, the Vessel was delivered to FIL on September 7, 2018, on dropping the pilot at Koh Si Chang.

10. At Kwinana, the Vessel was loaded with a full cargo of about 31,500 tonnes of sandy calcined metallurgical grade alumina and, on 30 September 2018, departed for the discharge port of Sept-Iles, Canada.

11. On or about October 6, 2018, as the Vessel was transiting through the Indian Ocean, the Vessel suffered a main engine failure. The Vessel drifted at sea for a period of about 10 days, during which time the crew performed temporary repairs. The Vessel then proceeded at reduced speed to Durban, South Africa for refuge.

12. On information and belief, the main engine problem arose because the alumina cargo had migrated into the bunker storage tanks.

13. The main engine required a full overhaul in Durban to repair the extensive damage. The Vessel was in Durban for about 51 days, from October 28, 2018 to December 18, 2018.

14. On January 16, 2019, the Vessel arrived at Sept Iles and discharged the cargo of alumina from January 17-26, 2019. Once the holds were free of cargo, on information and belief, it was apparent that the vent pipes in some of the cargo holds were excessively corroded from poor maintenance. That corrosion led to the alumina reaching the inside of the bunker tanks.

15. As a result of the delays, FIL lost the opportunity to find profitable employment for a second laden voyage, as required under the Charter Party, in mid-November 2018 and instead had to enter into a loss-making sub-charter.

16. On February 21, 2019, the Vessel was simultaneously redelivered from sub-charterers to FIL and from FIL to AWL on dropping the outward pilot at Swinoujscie, Poland.

17. AWL failed in its obligations to provide and keep the vessel in the contractual condition, amongst other failures and breaches without limitation.

18. AWL's failures caused FIL considerable damages and losses. The Vessel lost about 71 days during the first voyage as a result of the main engine failure. The Vessel was put off-hire by FIL for that period. AWL is also liable for related expenses and bunkers incurred during that period caused by AWL's failures. The total sum of those losses is estimated to be at least $718,000.

19. FIL also suffered a further loss as a result of AWL's failures in the total of about $436,000, comprising the loss of $187,000 on the sub-charter and the estimated profit loss of $249,000 for missing the more lucrative employment window for the second laden leg and instead finding itself having to fix a charter in January 2019.

20. FIL also suffered additional costs of at least approximately $102,000 as a result of dealing with AWL's erroneous allegation that the bunkers were of suspect quality and caused the main engine failure.

21. FIL's total sum of its principal damages is at least $1,256,000. FIL deducted part of its claim in the sum of about $648,000 from its hire payments under the Charter Party. The approximate balance of at least $608,000 remains owed by AWL to FIL. AWL has failed to pay this sum.

22. As set forth above, the Charter Party called, in pertinent part, for any disputes arising to be referred to London arbitration with each party appointing an arbitrator conversant with the shipping business, and the third arbitrator to be appointed by the two arbitrators so chosen.

23. On or about December 19, 2018, FIL appointed an arbitrator and gave notice of the appointment to AWL by email.

24. On or about January 10, 2019, AWL appointed a second arbitrator and gave notice of the appointment to FIL by email.

25. The third arbitrator has not yet been appointed.

26. The parties have not exchanged submissions in the arbitration as yet. FIL will be seeking the principal sum of, at least, $608,000 in damages plus interest (estimated at approximately $90,000 based on 5% compounded quarterly over three and a half years) and costs and fees for arbitration (estimated at approximately $475,000). Accordingly, the total amount claimed by Plaintiff against AWL, and subject to the continuing accrual of interest and the actual costs and fees for arbitration, is $1,173,000.

## FIRST CAUSE OF ACTION

**(breach of maritime contracts against AWL)**

27. Paragraphs 1 through 26 of this Complaint are repeated and realleged as if the same were set forth here at length.

28. AWL breached its obligations under the Charter Party.

29. FIL thereby sustained damages, as best as can now be estimated, of which an amount of, at least, $608,000 plus costs and interest is outstanding.

## RULE B ATTACHMENT

30. Paragraphs 1 through 29 of this Complaint are repeated and realleged as if the same were set forth here at length.

31. Pursuant to the terms of the Charter Party, disputes are to be resolved by arbitration. FIL therefore expressly reserves its rights to arbitrate the merits of the underlying dispute and bring this action to obtain *quasi in rem* jurisdiction over AWL and security for damages, plus interest and the costs for the arbitration.

32. Upon information and belief, and after investigation, AWL cannot be "found" within this District within the meaning of Rule B of the Supplemental Rules for Admiralty or Maritime Claims, but Plaintiff is informed that Defendant has, or will shortly have, property subject to attachment within this District.

33. Specifically, on information and belief, AWL maintains a bank account with Banco Sabadell at 1111 Brickell Avenue, Suite 3010, Miami, Florida, 33133 within this District. FIL paid hire under the Charter Party into this bank account, with AWL as beneficiary, as recently as January 2019. On information and belief, FIL understands that the Vessel is under new employment, and presently waiting at Novorossiysk port to deliver a sugar cargo, possibly in the next few days. Accordingly, on information and belief, FIL believes that AWL has recently received further hire or freight into this bank account and/or will soon receive hire or freight/demurrage. On information and belief, FIL also believes that AWL has entered into a memorandum of agreement for the sale of the Vessel and may have received (or will receive) a deposit and/or payment for that sale into this bank account. FIL therefore believes that Banco Sabadell holds property of AWL which can be

attached in this District and this Attachment is primarily directed at AWL's assets held at Banco Sabadell.

34. The total amount sought to be attached pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims by FIL against AWL, inclusive of the principal amount of $608,000, plus interest thereon and estimated costs and fees for arbitration, equals, at least, $1,173,000.

**WHEREFORE**, FIL prays as follows:

35. That process in due form of law according to the practice of this Court may issue against Defendant;

36. That the Court, in accordance with the provisions of Rule B of the Supplemental Rules for Admiralty or Maritime Claims, direct the issuance of Process of Maritime Attachment and Garnishment attaching all assets within the District owned by Defendant or in which Defendant has a beneficial interest at Banco Sabadell up to the amount of $1,173,000 so as to establish *quasi in rem* jurisdiction over the AWL and to serve as security for subsequent enforcement of any arbitral awards and judgments; and

37. That the Court grants such other, further and different relief as may be just, proper and equitable.

Dated: Miami, Florida
July 5, 2019

                                    BLANCK & COOPER, P.A.
                                    5730 S.W. 74th Street, Suite #700
                                    Miami, Florida  33143
                                    Phone:  (305) 663-0177
                                    Facsimile:  (305) 663-0146

                        **BY:**      ***//S// Robert W. Blanck, Esq.***
                                      Robert W. Blanck, Esq.
                                    Florida Bar Number: 311367
                                    Jonathan S. Cooper, Esq.
                                    Florida Bar Number: 99376
                                    Attorneys for Plaintiff

**Luke Zadkovich, Esq.**
Email: luke.zadkovich@floydzad.com
Floyd Zadkovich (US) LLP
215 Park Avenue South, 11th Floor
New York, New York 10003
Phone: (917) 868 1245
Co-Counsel with Pro Hac Vice Applications to be filed for Plaintiff

**Edward W. Floyd, Esq.**
Email: ed.floyd@floydzad.com
Floyd Zadkovich (US) LLP
215 Park Avenue South, 11th Floor
New York, New York 10003
Phone: (917) 999 6914
Co-Counsel with Pro Hac Vice Applications to be filed for Plaintiff

## VERIFICATION

Pursuant to the provisions of 28 U.S.C. § 1746, I, **Paul A. Gourdeau** hereby declare and state as follows:

1. I am employed by Fednav International Ltd. in the position of **Executive Vice-President, Operations**, and I make this verification on behalf of my employer the Plaintiff.

2. I have read the foregoing complaint and know the contents thereof, and the same are true to the best of my knowledge, information and belief. The sources of my information and the grounds for my belief are that I either have personal knowledge based upon my position with the Plaintiff or I have reviewed business records of the Plaintiff which I have reason to know are true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: July 5, 2019

*[signature]*

**Paul A. Gourdeau**
**Executive Vice-President,**
**Fednav International Ltd.**